## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

v.

GREGORY COLBURN, et al.,

Defendants.

Case No. 19-CR-10080-NMG

## I HSIN CHEN'S SENTENCING MEMORANDUM

Mr. Chen has entered into a plea agreement with the government pursuant to Fed. R. Crim. P. 11(c)(1)(C) providing for nine weeks of incarceration; 12 months supervised release, 100 hours of community service, and a fine of $ 75,000.  If the Court accepts the plea agreement, this would be the harshest sentence imposed on a defendant who pled guilty to a single involvement in Rick Singer's test-cheating scheme.  The sentence is more than sufficient to fulfill the purposes of sentencing set out at 18 U.S.C. 3553(a).  Yet the circumstances of Mr. Chen's offense are not more aggravated than those of others who have pled guilty in the case.  Mr. Chen did not grow up with wealth or privilege.  He is not a graduate of prestigious or costly schools.  He is an immigrant to this country who became a citizen and founded and built a family business that provides employment to over 300 Americans. Unlike some of the individuals charged in this case, Mr. Chen's son was ███████ ████████████████████████████████████████████████.  Mr. Chen did

not wrongly deduct his payments to Rick Singer from his taxable income as did some other defendants.  And though he was persuaded by Rick Singer to engage in the test cheating scheme, Mr. Chen rejected Rick Singer's proposal that he pay a $250,000 bribe to secure his son's admission to film school. Finally, Mr. Chen committed the offense to which he has plead guilty not from "self-aggrandizement, arrogance [or] a belief that the rules do not apply to those with wealth and privilege[1]" but out of love of and concern for his son. Given these circumstances, the sentence agreed upon between Mr. Chen and the government is sufficient and just.  The Court should accept the plea agreement and sentence Mr. Chen accordingly.

## I.  Personal and Family Background

I-Hsin "Joey" Chen was born in Taiwan in 1954.  He is one of four siblings (three surviving) and part of a close-knit family.   His father, 100 this year, and his mother, 93, are still alive, and Mr. Chen travels to Taiwan whenever possible to see them.  Mr. Chen's father is a retired pediatrician.  But, during the years Mr. Chen was raised, Taiwan was not a rich country.[2]  So while Mr. Chen did not grow up in poverty, he is not a product of affluence or privilege.  Mr. Chen's family imbued him with a strong work ethic.  Together with a belief in the importance of family, this work ethic has been central to Mr. Chen's character.

---

[1] See Government's Sentencing Memorandum re Gregory and Amy Colburn (Dkt 2578)at 6.
[2] In 1960 Taiwan's per capita GDP was $150  USD.  By 1974, the year Mr. Chen immigrated to the United States, per capita GDP had grown only to $904 USD. https://countryeconomy.com/gdp/taiwan?year=1988

At the age of 25, Mr. Chen followed his sister I-Hui Hsu to the United States. He arrived in New Jersey with an associate degree in banking from Danshui University in Tapei, little money, and minimal English skills, but with a fierce drive to pursue the American dream.  Mr. Chen moved to California to study accounting at California State University, Long Beach.  At the time, admission to California State Universities was open, and Mr. Chen took no standardized tests other than the Test of English as a Foreign Language.  Because his English was poor, Mr. Chen was required to take remedial English lessons as a condition of admission.  To keep up with his classes in accounting, Mr. Chen would record his classes and review the recordings (as well as his accounting text books) with a Mandarin/English dictionary. By hard work, and despite his language handicap, Mr. Chen was able to graduate from CSU Long Beach in three years with a B.S. in Business Administration while majoring in accounting.[3]

After graduating, Mr. Chen was able to find work as a bookkeeper at a warehouse business owned by other Taiwanese immigrants.  But Mr. Chen had always dreamed of starting his own business, so after a few years, together with a

---

[3] Mr. Chen's English comprehension is still far from perfect.  Since his graduation, Mr. Chen has lived largely in communities and worked in businesses where Mandarin is commonly spoken.  Only in 2014 did move to a community where English is the dominant—though not exclusive--language.  Mr. Chen speaks Mandarin at home.  He reads Mandarin newspapers and, other than sports, watches Mandarin-language programming on TV.  Mr. Chen estimates that in casual, non-hurried English conversation, he can understand roughly 70% of what is said to him.

friend, he began exporting American appliances to Taiwan.  When this business failed, Mr. Chen started another and then another until he succeeded.

In 1994, together with his sister, I-Hui Hsu, Mr. Chen started Imperial, CFS Inc.  The company owns and runs a Customs-bonded warehouse and container freight station servicing the Port of Long Beach.  Over 25 years, Mr. Chen and his sister created a large successful business that provides jobs to over 300 people in the local community.  For 25 years, this business was one of two centers of Mr. Chen's life.

The other was Joey Chen's family.  Mr. Chen moved to America to follow his dreams at the urging of his sister and mother.  When Joey Chens' sister I-Hui fell on hard times after her husband lost his job, Joey Chen encouraged her to move to California, helped her adjust to the new community, and spent time with her children.  When Mr. Chen decided to start the business that became Imperial CFS, he asked his sister to join him and the two have worked side by side for 25 years building the company.

Joey Chen has three children from his first marriage, Richard, Kevin, and Emily.  He is close to all of them.  Richard and Kevin live in Irvine, California (near Newport Coast where Joey Chen lives) and work at Imperial CFS.  And though she works elsewhere, Joey Chen sees his daughter Emily regularly.

Joey Chen has one child from his second marriage, his son Brian. █

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████   ██████   ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████

As Joey Chen's sister has explained, since ████████████████, "I-Hsin has always

been grateful to be able to spend each day with his son and guide him through days

███████████████████." █████████████████████████

███████████████████████████████████████

Beyond his family and his work, Joey Chen's chief involvement is with a few family friends and the Hong Shin Buddhist Temple.  Letters from those friends submitted concurrently with this memorandum describe Joey Chen as kind, humble, compassionate, and generous.  The abbot of the Hong Shin temple describes Joey Chen as a devout, diligent, and kind-hearted disciple.  None of Joey's friends could recognize in him the media's caricature of defendants in this case as greedy and arrogant or motivated by a desire for self-aggrandizement.  All see a good man who made a grievous mistake and has now paid for it dearly.

## II.     The Offense Conduct

Joey Chen has pled guilty.  He does not deny or contest his conduct as described in the Presentence Report, and he is deeply remorseful and ashamed.

Mr. Chen regrets most the harm he did to his son.  Brian is now 21 and is near the center of Mr. Chen's case.  It was Brian for whom Joey Chen arranged with Rick Singer an inflated ACT score.  ████████████████████████████

████████████████████████████████████████████

████████████████████████████████   To accomplish this, Brian wanted nothing more than to attend film school.  Mr. Chen wanted Brian to be able to pursue his dream but feared ████████████ would hamstring him.  As

███████████████████████████████████████

███████████████████████████████████████

███████     ███████████████████████████████

██████████████████████████████ (Letter of I-Hui Hsu.)  Rick Singer

promised Joey Chen that if he followed Singer's direction, Brian would get his

chance to go to film school and realize his dream.  █████████████████████████

███████████████████████████████████████

Joey Chen knows that he harmed Brian grievously.  When charges against

Joey Chen became public, Brian's high school immediately barred him from

campus.  Though it was his senior year, Brian could not participate in any senior

functions and, though he had done nothing wrong, could not even attend his own

graduation. Brian withdrew all his college applications which had relied upon the

tainted ACT score and was unable to attend any four-year college after his senior

year in high school.  Only this past year has Brian Chen begun attending a four-year

school from which he hopes to graduate.

Mr. Chen also knows that he put at risk his extended family's well-being and

that of many others.  Imperial CFS can operate only with a license from U.S.

Customs and Border Patrol.  By his conduct Mr. Chen put that license and the

livelihoods of all those who depend on Imperial CFS at risk.

Mr. Chen also recognizes the harm he has done to all those children, including those with disabilities, and parents who play by the rules in the college admission process.

For all these harms, Mr. Chen is deeply remorseful and ashamed.

### III.      Collateral Consequences

All offenses have collateral consequences.  Mr. Chen recognizes this.  By describing those he has faced, Mr. Chen intends only to put in context the appropriateness of additional punitive measures.

As a result of his conviction, Mr. Chen can no longer continue as an officer, director, or shareholder of Imperial CFS, Inc.  Mr. Chen has sold his entire interest in the company he started and helped to build over the past 25 years.  He can have no further active role with the company.

Beyond this, Mr. Chen has severely damaged his reputation in the close-knit Taiwanese immigrant community.  Only his closest friends have not shunned him, and Mr. Chen's world has shrunk over the past three years.  The pain of this is mitigated by Mr. Chen's love of and closeness to his family.  But Mr. Chen realizes he must spend the remainder of his years making good if he is to rebuild his reputation.

### IV.   Sentencing Recommendation

#### a.  Advisory Guidelines

Mr. Chen agrees with the U.S. Probation Office's calculation of the Guidelines Sentencing Range as set out in the Presentence Investigation Report. The Base Offense Level for a violation of 18 USC § 1349 is 7. See USSG §§ 2X1.1, 2B1.1. There are no specific offense characteristics or adjustments. By accepting responsibility for the offense, two points are subtracted, to arrive at a total offense level of 5. Mr. Chen falls in criminal history category I. The resulting advisory guideline range is 0-6 months.

#### b.  18 U.S.C § 3553(a)

The parties' plea agreement calls for a term of incarceration of nine weeks, 12 months of supervised release, 100 hours of community services and fine of $75,000. This sentence is fully justified by the factors the Court must consider under 18 U.S.C. § 3553(a). Indeed, the proposed sentence is "sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a), appropriately taking into account the seriousness of the offense, providing just punishment, affording adequate deterrence to criminal conduct, and avoiding unwarranted disparity in the sentencing of similarly situated defendants. See 18 U.S.C. § 3553(a).

Nine weeks of incarceration is a serious sanction, and it is within the range of sentences imposed by the Court on co-defendants and in related cases.  There is no

case to be made that Mr. Chen's conduct is more aggravated than that of defendants sentenced to similar terms of incarceration.    The government's sentencing memorandum filed in connection with the sentencing of Gregory and Amy Colburn (Dkt 2578) sets out the conduct of a number of similarly situated defendants.  A review of these makes clear that Mr. Chen's conduct is less, not more aggravated:

- Defendant David Sidoo was sentenced to three months in prison after agreeing to pay $200,000 to facilitate exam cheating multiple times on behalf of his two sons. Unlike the defendants, Sidoo engaged in fraud beyond exam cheating—including by providing edits to fraudulent essays for his son's college application and arranging for cheating on a high school exam—and he completed the exam cheating twice. . . .

In contrast to Mr. Sidoo, Mr. Chen was involved in a single instance of test cheating and engaged in no other fraud.

- Defendants Gregg and Marcia Abbott were each sentenced to one month in prison after agreeing to pay $125,000 to facilitate cheating on their daughter's college entrance exams. Unlike the defendants, the Abbotts engaged in Singer's scheme on two occasions. . . .

Unlike the Abbots, Mr. Chen was involved in a single instance of test cheating.

- Defendant William McGlashan was sentenced to three months in prison after agreeing to pay $50,000 to cheat on his son's ACT exam and agreeing to participate in the athletic-recruitment aspect of Singer's scheme (before he was tipped off by Singer). Like the defendants, McGlashan conditionally pled guilty and preserved his right to appeal. Unlike the defendants, McGlashan agreed to the side-door aspect of the scheme and also explored engaging in additional exam cheating for his other children.

Mr. Chen did not consider test cheating beyond the single instance to which he has pled guilty.  And Mr. Chen did not engage in the "side door"/bribery scheme.  In

fact, Rick Singer approached Joey Chen in August of 2018 offering to guarantee Brian admission to Chapman University's film school for a $250,000 bribe payment. As Singer told one of his compatriots: "I told them just now, I said you know he's not going to get accepted anywhere and that's fine I just wanted to tell you now so your not surprised later on."[4]  Despite this pressure, Joey Chen refused Rick Singer's invitation to bribe school officials: "[T]hey decided they are not going to do it, which is fine, I just left [their] house."  Though Singer's compatriot promised to bring further pressure on him, Joey Chen refused to be involved in the side door bribery.

- Defendant Mark Hauser was sentenced to two months in prison for agreeing to pay $40,000 to cheat on his daughter's ACT exam. Unlike Hauser, the defendants did not agree to refer other clients to Singer. Like Hauser, who disguised his payment as a business consulting fee, the defendants lied about the nature of their payments, deducting them as fake charitable contributions.

Unlike Mr. Hauser, Mr. Chen did not agree to refer clients to Rick Singer nor did he deduct his payment to Rick Singer from his taxable income.  Indeed, where Mr. Chen's conduct differs from the conduct of parents whom the government described, it is because his conduct was less, not more aggravated.

Last, the proposed sentence adequately serves the goals of both general and specific deterrence.  The extraordinary publicity (itself a source of punishment of

---

[4] In fact, Rick Singer had no apparent connection with Chapman University and no way to assure Brian admission there, with or without bribery.

Mr. Chen) will serve to deter any similar conduct as will the nine-week sentence, which is significant punishment.  Mr. Chen is at no risk of re-offending.  Before his conduct here, Joey Chen had led an exemplary life.  He has been a model of what we want of our citizens.  And he has taken full responsibility for his actions and committed to making amends for his wrongs.

### V.    Conclusion

For all these reasons, the Court should accept the parties' plea agreement and impose the agreed upon.

Dated: April 15, 2022                              Respectfully submitted,

                                                   _/s/ Reuben Camper Cahn_____

                                                   Reuben Camper Cahn (*pro hac vice*)
                                                   KELLER/ANDERLE LLP
                                                   18300 Von Karman Avenue, Suite 930
                                                   Irvine, California 92612
                                                   Tel. (949) 476-8700
                                                   rcahn@kelleranderle.com

                                                   *Counsel for I-Hsin "Joey" Chen*

## **CERTIFICATE OF SERVICE**

In accordance with Local Rule 5.2(b), I, Reuben Camper Cahn, hereby certify that on April 15, 2022 this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Reuben Camper Cahn*
Reuben Camper Cahn